IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAGID SALAH ELDIN MOHAMED, | § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:23-cv-1835-D-BN |
| HESHAM A. SADEK, ET AL., | § § | |
| Defendants. | § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Magid Salah Eldin Mohamed filed a *pro se* complaint that he then amended as a matter of course under Federal Rule of Civil Procedure 15. *See* Dkt. Nos. 3 & 8. And, through his amended complaint, Mohamed alleges that he was wrongfully dismissed from the Medical Scientist Training Program (MSTP) at the University of Texas Southwestern Medical Center (UTSWMC), in violation of the Fourteenth Amendment to the United States Constitution, federal statutes (the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA)), related federal regulations, and state law.

Senior United States District Judge Sidney A. Fitzwater referred Mohamed's lawsuit to the undersigned United States magistrate judge for screening under 28 U.S.C. § 636(b) and a standing order of reference.

The Court previously granted Mohamed's motion for leave to proceed *in forma pauperis* (IFP), *see* Dkt. Nos. 4 & 7, subjecting the complaint to screening under 28 U.S.C. § 1915(e)(2).

And the undersigned now enters these findings of fact, conclusions of law, and recommendation that, to the extent and for the reasons set out below, the Court should dismiss the amended complaint without prejudice as to the claim over which the Court lacks jurisdiction but with prejudice as to the remaining claims, which are time barred based on the face of the complaint.

## Discussion

In the operative complaint, Mohamed specifies three causes of action against UTSWMC: (1) breach of contract (that UTSWMC breached contractual agreements with federal authorities and that he is a third-party beneficiary of this contract); (2) discrimination under Title II of the ADA, the RA, and related regulations; and (3) retaliation under the same federal authority. Mohamed adds a fourth claim under 42 U.S.C. § 1983 against employees of UTSWMC.

**I.      The Court should dismiss Mohamed's breach of contract claim for lack of subject matter jurisdiction.**

As to the alleged breach of contract, Mohamed asserts, in part, that UTSWMC "is [a] Federal Financial Assistance (FFA) recipient of the NIH T32 Grant" and "the NIH Diversity Supplement"; that both the NIH grant and supplement are authorized by federal law and "contain explicit anti-discrimination provisions as required by federal statutes"; that "UTSWMC failed to live up to its obligations under the assurance of compliance contract (HHS-690) to administer the [FFA] it accepted in a way that prevents discrimination on the basis of disability," a "binding obligation and condition to acceptance of FFA from the HHS/NIH"; and that, "[b]y signing the agreement, UTSWMC was on notice that it would subjugate itself to the jurisdiction

of federal court in the event of noncompliance, thereby waiving its sovereign immunity." Dkt. No. 8 at 10-14.

Mohamed is correct that the starting point for considering this claim against UTSWMC is sovereign immunity – more specifically, whether UTSWMC enjoys Texas's sovereign immunity. It does.

> The University of Texas Southwestern Medical Center is treated as part of the University of Texas System. TEX. EDUC. CODE § 65.02(a)(7). Under the Texas Government Code, a university system or an institution of higher education is a "state agency." TEX. GOV. CODE § 572.002(10)(B). This status as a "state agency" affords such institutions sovereign immunity protection from lawsuits, under the Eleventh Amendment to the United States Constitution. *Whitehead v. Univ. of Tex. Health Science Center at San Antonio*, 854 S.W.2d 175, 180 (Tex. App. – San Antonio 1993, no writ) ("A state agency, as an arm of the state, is shielded by the sovereign immunity available to the state government."). This specifically applies to a state's universities. *Nat'l Sports & Spirit, Inc. v. Univ. of N. Tex.*, 117 S.W.3d 76, 81 (Tex. App. – Fort Worth 2003, no pet.) ("As an agency of the State, UNT enjoys the protection afforded by this sovereign immunity, except in instances where immunity has been expressly waived by statute."). Such sovereign immunity protection also extends to a public university's health institutions. *See Sullivan v. Univ. of Texas Health Sci. Ctr. at Houston Dental Branch*, 217 F. App'x 391, 392 (5th Cir. 2007) ("It is undisputed that UTHSC, as an arm of the state, is entitled to Eleventh Amendment immunity absent Congressional abrogation or voluntary waiver."); *Scott v. Pfizer Inc.*, 182 F. App'x 312, 315 (5th Cir. 2006) (holding that the University of Texas Medical Branch "is an agency of the State of Texas, giving it Eleventh Amendment immunity").

*Estate of Hernandez v. United States*, No. 3:12-cv-4859-M, 2013 WL 3579487, at *1 (N.D. Tex. July 15, 2013).

"Sovereign immunity is jurisdictional." *St. Marion Props., L.L.C. v. City of Hous.*, ___ F.4th ____, No. 22-20019, 2023 WL 5346633, at *5 (5th Cir. Aug. 21, 2023) (quoting *Cozzo v. Tangipahoa Par. Council – President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002)).

"In most cases, [it] bars private suits against nonconsenting states in federal court." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (citations omitted); *see Stramaski v. Lawley*, 44 F.4th 318, 321-22 (5th Cir. 2022) ("Absent waiver, the immunity of a state from suit as signified by, but not fully expressed in, the Eleventh Amendment is a jurisdictional barrier." (citing *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 374, 276 (5th Cir. 2020))).

And "[a] federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) (*Pennhurst II*).

But there are "three recognized exceptions to sovereign immunity: [where] suits seek injunctive or declaratory relief against state officials under *Ex parte Young*, 209 U.S. 123 (1908); a state's waiver of immunity, *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 267 (1997); or Congress's abrogation of state immunity via Section 5 of the Fourteenth Amendment, *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 364 (2001)." *Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 469 F. App'x 364, 366 (5th Cir. 2012) (per curiam).

In support of the breach of contract claim, Mohamed cites Texas law. *See* Dkt. No. 8 at 9. And it is established that sovereign immunity prevents the Court's jurisdiction over a state law breach of contract claim against a state agency, such as UTSWMC. *See, e.g.*, *Pathria v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, No. SA-12-CV-388-XR, 2013 WL 265241, at *1 (W.D. Tex. Jan. 23, 2013) (where a student asserted a breach of contract claim against a state agency based on the guidelines of

a departmental handbook, the court held that "[t]here does not exist any legislative consent by Texas to bring this suit, nor is there any statutory authorization for same"; "Texas has retained a separate immunity from liability for any breach of contract claim"; and, [a]ccordingly, the claim is dismissed," and further noted that "[t]he State of Texas has waived sovereign immunity as to breach of contract claims asserted against a local governmental entity" but that "state universities are not a local government entity covered by the Local Government Code" (citations omitted)); *see also Kitchens v. Tex. Dep't of Human Res.*, 747 F.2d 985, 986 (5th Cir. 1984) ("Kitchens's pendent contract claim sought money damages against a state agency. Had that claim been brought independently in federal court, it clearly would have been barred by the Eleventh Amendment." (citing *Pennhurst II*; *Alabama v. Pugh*, 438 U.S. 781 (1978))).

Mohamed adds a federal-law gloss to this standalone state-law claim by asserting that UTSWMC waived its sovereign immunity through contractually agreeing to accept the federal funds under an assurance that it would not discriminate based on a disability.

But, where the Court must examine "each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment," *Pennhurst II*, 465 U.S. at 121, the formation of the contract, under which UTSWMC allegedly accepted federal funds, and the alleged breach of that contract – again, a claim made under state law, not under a federal statute – are not enough to find that Texas waived its sovereign immunity, particularly where Mohamed's complaint includes separate

claims under the ADA and the RA based on the same facts.

And Mohamed's allegations as to waiver are speculative – *e.g.*, "By signing the agreement, UTSWMC was on notice that it would subjugate itself to the jurisdiction of federal court in the event of noncompliance, thereby waiving its sovereign immunity," Dkt. No. 8 at 10 – and therefore do not carry his burden to show that the State knowingly waived sovereign immunity. *Cf. Tex. Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350, 361 (5th Cir. 2021) ("[T]he sheer breadth of the opposite holding – that states must forgo every dollar of federal funding or else waive immunity – is reason to be skeptical that states knowingly made that choice."); *Estate of Hernandez*, 2013 WL 3579487, at *2-*3 (as to a contract between UTSWMC and the United States, concluding that there was "no basis for finding a waiver of immunity from the proffered evidence, nor will [the court] speculate as to what could be extant in documents not presented" and rejecting the argument "that because UTSWMC entered into an agreement with the United States and took federal funds, in doing so it accepted 'federal strings,' which constitutes a waiver of immunity" where the plaintiff failed "to make a substantive connection between the concept of 'federal strings' and how it allegedly abrogates the Eleventh Amendment or sovereign immunity").

Mohamed's beliefs as to a contractual waiver of sovereign immunity may be rooted in Title XI, which "proscribes gender discrimination in education programs or other activities receiving federal financial assistance," and, through which, "Congress [ ] successfully codified a statute which clearly, unambiguously, and unequivocally

conditions receipt of federal funds under Title IX on the State's waiver of Eleventh Amendment Immunity." *Pederson v. La. State Univ.*, 213 F.3d 858, 877, 876 (5th Cir. 2000) (citations omitted).

But Mohamed does not allege discrimination based on gender. Nor does he premise his breach of contract claim on gender discrimination or Title IX.

And, as a panel of the United States Court of Appeals for the Fifth Circuit has discussed recently in the context of the ADA, States do "not waive [their] immunity to suit [just] by accepting financial assistance under federal law." *Sullivan v. Tex. A&M Univ. Sys.*, 986 F.3d 593, 596 (5th Cir. 2021).

And, while "States can, under certain circumstances, waive their sovereign immunity by accepting federal funds and then violating 'section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance,'" *id.* at 596-96 (quoting 42 U.S.C. § 2000d-7(a)(1)), Mohamed asserts a violation of state contract law – not of an applicable Federal statute, *cf. id.* at 597-98 (concluding that the plaintiff "failed to show that the State waived its sovereign immunity under § 2000d-7(a)(1)" where the federal statute on which the claim was based (Title I of the ADA) did not fall into Section 2000d-7(a)(1)'s residual clause).

## II. The Court should dismiss Mohamed's remaining claims because the face of the complaint reflects that each claim is time barred.

Only for the present purpose of screening the complaint, it does seem that

Mohamed has alleged other claims – under the RA and Title II of the ADA (against UTSWMC), and Section 1983 (against the individual defendants) – over which the Court has subject matter jurisdiction. *See, e.g.*, *Sullivan*, 986 F.3d at 597 ("[A] State is amenable to suit where it operates a program in violation of the Rehabilitation Act and accepts federal financial assistance for that state program." (citing *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 288-89 (5th Cir. 2005) (en banc))); *Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021) ("Title II of the ADA validly abrogates state sovereign immunity when the state's conduct actually violates the Fourteenth Amendment." (citing *United States v. Georgia*, 546 U.S. 151, 159 (2006))); *see also Block v. Tex. Bd. of Law Exam'rs*, 952 F.3d 613, 619 (5th Cir. 2020) (while Mohamed alleges retaliation under Title V of the ADA, which "itself does not abrogate a state's sovereign immunity," "a plaintiff may bring a retaliation claim against a state entity only to the extent that the underlying claim of discrimination effectively abrogates sovereign immunity of the particular state" (quoting *Dottin v. Tex. Dep't of Crim. Justice*, 627 F. App'x 397, 398 (5th Cir. 2015) (per curiam))).

But, even if his remaining claims are not barred by sovereign immunity, they are time barred.

Mohamed's remaining claims are subject to a two-year statute of limitations. Consistent with Congress's mandate, "[t]he ADA and the [RA] generally are interpreted in *pari materia*." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (en banc) (footnote omitted). While neither statute "provides a limitations period," *id.* at 236, as to both, the Court should "apply Texas's two-year personal-

injury limitations period to this case," *id.* at 237 (footnote omitted); *see also* TEX. CIV. PRAC. & REM. CODE § 16.003. And claims for violations of the Constitution brought under Section 1983 are governed by the same two-year, personal-injury limitations statute. *See Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987); *Shelby v. City of El Paso, Tex.*, 577 F. App'x 327, 331 (5th Cir. 2014) (per curiam).

But when these claims accrued – that is, when the two-year limitations period began to run – remains "a matter of federal law." *Frame*, 657 F.3d at 238 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008)); *see also Epps*, 550 F.3d at 414 (Courts "determine the accrual date of a § 1983 action by reference to federal law." (citing *Wallace*, 549 U.S. at 388)).

And "[f]ederal law holds generally that an action accrues when a plaintiff has a complete and present cause of action, or, expressed differently, when the plaintiff can file suit and obtain relief." *Epps*, 550 F.3d at 414 (cleaned up; quoting *Wallace*, 549 U.S. at 388). So "the limitations period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Id.* (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001)).

Here, that moment was – at the latest – when Mohamed was dismissed from the MSTP at UTSWMC on February 24, 2021. *See* Dkt. No. 8 at 8; *see also id.* at 9 (alleging harms that occurred because of his dismissal, which do not raise a reasonable inference that his claims could have accrued after his dismissal).

But Mohamed did not file this lawsuit until August 16, 2023 – more than two

years after the claims accrued.

That claims are subject to dismissal based on a statute of limitations is typically an affirmative defense. But, as set out above, Mohamed filed this lawsuit IFP, subjecting his claims to judicial screening under Section 1915(e). And, if "'it is clear from the face of [such] a complaint ... that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed' as frivolous." *Wilson v. U.S. Penitentiary Leavenworth*, 450 F. App'x 397, 399 (5th Cir. 2011) (per curiam) (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993) ("Although the defense of limitations is an affirmative defense, which usually must be raised by the defendants in the district court, this court has held that the district court may raise the defense *sua sponte* in an action proceeding under 28 U.S.C. § 1915. Thus, where it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed pursuant to § 1915[(e)]." (citations omitted))).

That is the case here. The face of the operative complaint makes it clear that the remaining claims are time barred.

"[A] litigant is entitled to equitable tolling of a statute of limitations" "if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010))

But a plaintiff must "allege specific facts" to support all prongs of "a plausible

equitable tolling claim." *Taggart v. Norwest Mortg., Inc.*, Civ. A. No. 09-1281, 2010 WL 114946, at *3 (E.D. Pa. Jan. 11, 2010); *see also Chandra v. Bowhead Sci. & Tech., LLC*, No. 3:16-cv-375-B, 2018 WL 1252097, at *4 (N.D. Tex. Mar. 12, 2018) ("Courts still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. So *pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, and brief arguments on appeal. Chandra's pleadings fall short of that goal by failing to allege any plausible facts entitling him to equitable tolling." (cleaned up; quoting *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014))). *Cf. Peterson v. United States*, No. 8:18-cv-217-T-17TGW, 2018 WL 1832417, at *2 (M.D. Fla. Feb. 16, 2018) ("The FTCA's limitation period, however, is subject to equitable tolling. The plaintiff does not even mention that it applies. In light of the length of time between the death and the filing of this lawsuit, a claim of equitable tolling would seemingly be implausible and thus frivolous." (citation omitted)), *rec. adopted*, 2018 WL 1832419 (M.D. Fla. Mar. 14, 2018).

Mohamed fails to allege facts in his amended complaint to support either prong of equitable tolling.

## Recommendation

The Court should dismiss Plaintiff Magid Salah Eldin Mohamed's amended complaint without prejudice as to the breach of contract claim but with prejudice as to the remaining claims asserted.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 1, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE